**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE: FUTURE MOTION )        MDL DOCKET NO. ____
)

**MEMORANDUM IN SUPPORT OF DEFENDANT FUTURE MOTION, INC.'S MOTION TO TRANSFER ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I.        INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("the Panel"), Movant Future Motion, Inc. ("Future Motion") respectfully submits this Memorandum in support of its Motion to Transfer Actions for coordination or consolidation of pretrial proceedings.

Future Motion is the creator and manufacturer of the Onewheel, a one-wheeled electric skateboard. The Onewheel is a recreational product and Future Motion has been involved in litigation brought by individuals who alleged injury due to falling from a Onewheel while riding.

There are 31 pending federal products liability actions in 15 district courts involving the Onewheel. These actions involve a common set of facts in that the plaintiffs similarly, or identically, allege that they fell because the Onewheel stopped or shut off unexpectedly. The plaintiffs have all asserted causes of action sounding in products liability. Centralization of these actions would facilitate coordinated discovery, prevent inconsistent rulings, and promote the efficiency and convenience of the parties, counsel, and court. Accordingly, Future Motion respectfully requests the Panel order transfer and coordinated or consolidated pretrial proceedings for the Actions. Future Motion further requests that the actions be transferred to the Middle District of Florida as it has the highest quantity of case and the most familiarity with Future Motion cases, and Florida is geographically convenient for the greatest number of parties, witnesses, and counsel.

## II.     BACKGROUND

### A.  Future Motion and the Onewheel Board.

1.   Future Motion is the creator and manufacturer of a one-wheeled electric skateboard called the Onewheel.

2.   The first board introduced in 2014 was the original Onewheel. Since then, Future Motion has introduced five other Onewheel models, distinguished primarily by size and battery range.

3.   The Onewheel is generally comprised of a motor, battery, footpad sensor and wheel, and has electronic components which allow it to self-balance.

4.   A rider of a Onewheel stands sideways on a board like a traditional skateboard. After the board is turned on, and a rider brings it to level, the motor will engage and start balancing the rider. To go forward, a rider leans forward, and to slow down or stop, a rider leans backwards. A board is turned by having the rider put pressure on his or her toes or heels to turn the board in the direction chosen. The board is entirely controlled by the rider. The rider decides how fast to ride, the terrain a board is ridden on, and all other aspects of the riding experience.

### B.  Onewheel-Related Litigation.

5.   There are currently 31 Onewheel-related actions pending in federal court in 15 districts[1], as listed on the Schedule of Actions, which Future Motion seeks to transfer and coordinate or consolidate.

---

[1] In addition to the 31 actions listed on the Schedule of Actions, there is a consolidated federal class action lawsuit:

JAMES LOH, CHRISTOPHER FOO, SEAN MICHAEL SMITH, GIOVANY RICO, RAYMOND WANG, DEVON HOLT, JERROD HUNTER NICHOLS, VALENTINA FORCELLA, DEREK GUILFORD, JAMES GRANT, JOHNNY LEOMBRUNO, CARLOS MURPHY, STEPHEN POWELL, BRADLEY REBER, RICHARD BONNER, AND JOSHUA FLOTT, individually and on behalf of all others similarly situated v. Future

6.   Most of the Onewheel-related cases involve a single plaintiff, though some cases also include a loss of consortium claim by a spouse. In all of the Onewheel-related cases, the plaintiff alleges she or he sustained personal injuries while riding a Onewheel, and in most cases plaintiffs allege the Onewheel stopped or shut off unexpectedly, causing them to fall from the board. Many of the Complaints contain the exact same allegations, copied and pasted word for word.

7.   The plaintiffs in these cases assert the same core set of causes of action against Future Motion, sounding in product liability—strict liability and negligence claims of design defect, manufacturing defect, and failure to warn. There are a few plaintiffs that have also asserted causes of actions for violation of a consumer protection statute, violations of a business and professions code, and/or breach of warranty.

8.   The venue of the 31 federal Onewheel-related actions is broken down as follows:

|   | District Court | # Onewheel cases |
|---|---|---|
| 1 | District of Colorado | 1 |
| 2 | District of New Mexico | 1 |
| 3 | District of Southern Carolina | 1 |
| 4 | Eastern District of Texas | 1 |
| 5 | Southern District of Texas | 1 |
| 6 | Eastern District of New York | 1 |

---

Motion, Inc., United States District Court, Northern District of California, Case No.: 5:21-CV-06088-PCP.

Future Motion does not seek to transfer and coordinate the class action lawsuit as the allegations focus on general warranties and advertising to a class of consumers, as opposed to an alleged product defect that is casually related to a single personal injury.

Aside from the federal actions, Future Motion is also involved in litigation in various state courts. The vast majority of state court litigation is subject to pre-trial coordination in California state court.

| 7  | Middle District of Florida       | 11 |
|----|----------------------------------|----|
| 8  | Southern District of Florida     | 2  |
| 9  | Middle District of Tennessee     | 2  |
| 10 | Northern District of California   | 2  |
| 11 | Northern District of Georgia     | 1  |
| 12 | Northern District of Illinois    | 3  |
| 13 | District of New Jersey           | 2  |
| 14 | Western District of Oklahoma     | 1  |
| 15 | Western District of Washington   | 1  |

9.   The plaintiffs in the Onewheel-related cases reside all across the United States, but the greatest plurality, 12 plaintiffs, reside in Florida.

10. All but one of the alleged incidents occurred in the district in which the case is venued.[2] Thus, 13 of the alleged incidents occurred in Florida.

11. There are at least 24 law firms involved in representing the plaintiffs and one pro se plaintiff. These law firms are located in numerous states throughout the country. Three of the law firms, responsible for representing the plaintiffs in 16 of the cases, are located  in Florida.

12. Future Motion is the sole defendant in all 31 cases. Future Motion is headquartered in Santa Cruz, California.

13. Future Motion is represented by national counsel Nilan Johnson Lewis, P.A., located in Minneapolis, Minnesota, and various local counsel throughout the United States. Rumberger, Kirk, & Caldwell, P.A., located in Florida, serves as local counsel in 13 cases.

---

[2] The case venued in the Northern District of California arises out of an incident that allegedly occurred in Kansas for plaintiffs who reside in Texas.

14. All of the Onewheel cases are in the discovery phase of litigation. In a few cases, written discovery has not yet been exchanged. In other cases, the parties have exchanged some written discovery and produced documents. Given the similarity of the claims against Future Motion, much of the plaintiffs' written discovery has been virtually identical, leading Future Motion to prepare duplicative written discovery responses in many Onewheel-related cases.

15. A plaintiff has been deposed in approximately half of the Onewheel-related cases.

16. A Future Motion corporate representative has been deposed 3 times in relation to these federal actions. The plaintiff in nearly every action has requested to depose a Future Motion corporate representative and/or Future Motion executives and employees.

17. In some cases, the parties also have inspected and test ridden the plaintiffs' Onewheel boards, and in other cases a board inspection and test ride remains to be scheduled. A board inspection involves coordinating travel with an expert for Future Motion and a Future Motion test rider.

18. Plaintiffs' counsel in some Onewheel-related cases have demanded the opportunity to inspect the source code underlying the Onewheel board. If source code were discoverable, an inspection would be time-consuming and expensive, as it requires the aid of numerous retained experts.

19. No Onewheel-related case has been tried to a verdict. A dispositive motion has conclusively resolved the plaintiff's claims in Future Motion's favor in one federal case[3] and

---

[3] This case is not included in the list of cases on the Schedule of Actions because judgment has already been entered in Future Motion's favor.

resolved some of the plaintiff's claims in Future Motion's favor in a different federal case[4], but otherwise the cases have not reached the phase of a decision through dispositive motion practice.

20. Many of the plaintiffs, through represented by different counsel, have retained the same set of experts. Future Motion anticipates it will rely on the same or similar teams of expert witnesses in all cases.

### III.   ARGUMENT

#### a. Transfer to One District Court for Coordination or Consolidate Is Appropriate Under 28 U.S.C. § 1407.

The creation of a multidistrict litigation ("MDL") is appropriate where "civil actions involving one or more common questions of fact are pending in different districts," and transfer will serve "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). As this Panel has emphasized, "[c]entralization [permits] all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). Section 1407 is intended to eliminate "multiplied delay, confusion, conflict, inordinate expenses and inefficiency." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L. 1968).

There are numerous Onewheel actions with common questions of fact filed in 15 districts. Given the common nature of these cases, the number of current actions, and the potential for additional actions to be filed across the country, transfer and coordination or consolidation will

---

[4] This case has also not been included on the Schedule of Actions as the parties reached a settlement, although that matter is now the subject of a Motion to Enforce Settlement in the Southern District of Florida.

serve the convenience of parties and witnesses and promote the just and efficient conduct of such actions.

      1.        <u>These Actions Involve Common Questions of Fact, and Centralization of the Actions will Minimize the Risk of Inconsistent Rulings.</u>

The first requirement of 28 U.S.C. § 1407(a) is the presence of common questions of fact. Transfer and pretrial centralization of actions sharing common questions of fact "conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017). However, common questions of fact do not require complete identity or even a majority of common questions to justify transfer. *In re Zyprexa Prods. Liab. Litig.,* 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004); *see also In re: Rembrandt Teehs., L.P., Patent Litig.*, 493 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007) ("Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer.").

Products liability actions are particularly amenable to centralization.[5] Allegations that a product is defective constitute a common question of fact under 28 U.S.C. § 1407(a) warranting centralization. *See, e.g., In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.,* 543 F. Supp. 2d 1376, 1378 (J.P.M.L. 2008) (allegations that certain diabetes drugs manufactured by the defendant caused an increased risk of heart attack and other physical injury, and the defendant failed to provide adequate warnings concerning that risk involved a common question of fact); *In re Gadolinium Contrast Dyes Prods. Liab. Litig.*, 536 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008) (these actions share questions of fact arising out of the allegation that gadolinium based contrast dyes may cause nephrogenic systemic fibrosis in patients with impaired renal function). The Panel

---

[5]   In 2022, more than a third of all MDLs involved products liability. https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Calendar_Year_Statistics-2022.pdf

has rejected the argument that products liability actions must allege identical injuries. *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liab. Litig.*, 254 F. Supp. 3d at 1382. The Panel has also rejected the argument that products liability actions must allege identical causes of action to warrant centralization. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 543 F. Supp. 2d at 1378.

Transfer and centralization are appropriate here because the actions all have substantial commonality of questions of fact. All of the actions include identical, or nearly identical allegations, that the plaintiffs were riding a Onewheel when it stopped or shut off unexpectedly. All of the actions allege issues concerning the design, manufacture, and warnings for the Onewheel boards. The plaintiffs will rely on the same or similar evidence to attempt to support their allegations; Future Motion will rely on the same or similar evidence to disprove liability in all cases. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.

2.        Centralization of the Actions Will Promote the Just and Efficient Litigation of the Actions and Will Serve the Convenience of the Parties and Witnesses.

Section 1407 also requires that centralization promote the just and efficient conduct of the actions. The purpose of this statute is the avoidance of conflicting and duplicative pretrial demands on parties and witnesses in related cases. *In re Regents of the Univ. of Cal.*, 964 F.2d 1128, 1131 (Fed. Cir. 1992). Centralization "has the benefit of placing all actions in this docket, as well as any additional related actions that may be forthcoming, before a single transferee judge who can structure pretrial proceedings to ensure that pretrial discovery and rulings will occur in a manner that minimizes the risk of duplication or inconsistency and that thereby leads to the just and expeditious resolution of all actions to the overall benefit of those involved. *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 588 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008).

There are 31 actions pending in 15 district courts, and at least 24 law firms representing plaintiffs involved in this litigation. Centralization of these actions before a single judge is the most just and efficient way to manage this litigation, and will serve the convenience of the parties and witnesses.

Centralization will make all forms of discovery more convenient. In Future Motion's experience so far, discovery requests have tended to seek the same categories of information and often involve identical discovery requests for information. Multiple plaintiffs have requested depositions of Future Motion witnesses and an inspection of the Onewheel board source code. Future Motion is a small company and its witnesses are not professional deponents; they are executives and engineers primarily engaged in Future Motion's business. Centralization of the Onewheel-related cases would drastically reduce the number of times these witnesses would sit for deposition. Further, it is likely that the same or similar teams of experts will be designated by counsel for the plaintiffs and counsel for Future Motion. Thus, it would be equally convenient for the parties, counsel, and expert witnesses to undertake expert disclosures, production of expert files, and expert depositions in a coordinated manner.

Given the similarity of the pleadings and discovery in all 30 cases, it is likely the parties will raise equally similar discovery disputes and motion practice to the courts' attention. Such duplicative motion practice drains resources and slows the overall pace of the litigation. Centralization of all actions, therefore, will allow for efficient coordination of briefing and rulings on discovery motions, Daubert motions, and dispositive motions.

Centralizing the actions for coordination under 1407 is necessary to eliminate duplicative discovery and motion practice, prevent inconsistent judicial rulings, promote convenience and

efficiency to the parties and witnesses, and conserve judicial resources. As a result, the Panel should grant Future Motion's Motion to Transfer for Coordinated or Consolidated Pretrial Proceedings.

### b.   These Actions Should be Transferred to the Middle District of Florida.

In determining an appropriate transferee forum, the Panel balances several factors, including the experience, skill, and caseloads of the available judges; the number of cases pending the jurisdiction; the median times from filing to disposition and from issue to trial for civil actions; the convenience of the parties; location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. *See, e.g., In re Regents of University of California*, 964 F.2d 1128, 1136 (Fed. Cir. 1992); *In re Preferential Drugs Prods. Pricing Antitrust Litig.*, 429 F.Supp. 1027, 1029 (J.P.M.L. 1977). The number of pending actions and the stage of the pending actions are an important consideration in selecting the appropriate transferee forum. *See, e.g, In re Celotex Corp. "Technifoam" Prods. Liab. Litig.*, 1975 U.S. Dist. LEXIS 16172, at *9 (J.P.M.L. Sep. 16, 1975); *see also*  David F. Hen, Multidistrict Litigation Manual § 6:8 (2010) ("[T]he Panel will not normally transfer actions to a district in which no action is then pending and the panel clearly considers the number of actions pending in various districts to determine the selection.").

Future Motion urges the Panel to transfer the Actions to Middle District of Florida where a court with Multidistrict Litigation experience can efficiently, justly, and capably manage them. The Middle District of Florida judges are well-versed in handling multidistrict litigation and are currently handling the following MDLs: *In Re Disposable Contact Lens Antitrust Litigation, In Re Tasigna (Nilotinib) Products Liability Litigation,* and *In Re Prepared Food Photos, Inc., Copyright Litigation.* The Middle of District of Florida is an efficient district. The median time from filing to

10

disposition in a civil case is just six months.[6] There are 15 judgeships with zero vacant judgeship months in the past two years.[7]

The Middle District of Florida is an appropriate transferee district by virtue of the fact that 11 of the 31 of the federal Onewheel-related actions are already pending there. The Middle District of Florida has the highest quantity of cases by far, with no other district having more than three cases pending. The Middle District of Florida has the most familiarity with Future Motion cases and judges with experience to steer this docket on a prudent course. The Middle District of Florida is the center of gravity for the federal Onewheel-related litigation.

In addition to these other factors, centralization in the Middle District of Florida offers geographic convenience for the greatest number of parties, witnesses, and counsel. The largest plurality of plaintiffs and firms representing the plaintiffs reside in Florida. The largest number of incidents occurred in Florida and, thus, any facts witnesses and treating medical providers are more likely to reside in Florida.

Future Motion is located in Santa Cruz, California. However, Future Motion witnesses can appear via Zoom, so it does not object to transfer to the Middle District of Florida. Future Motion's counsel is located in Minnesota. Given that there are no pending actions in the District of Minnesota, Future Motion's counsel would be required to travel to any forum. There is no other location that offers geographic convenience for the same quantity of parties, witnesses, and counsel. Therefore, all actions should be transferred to the Middle District of Florida for coordinated or consolidated pretrial proceedings.

---

[6] https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/06/30-1
[7] *Id.*

## IV.   CONCLUSION

For all the reasons herein, Future Motion respectfully requests the Panel order coordinated or consolidated pretrial proceedings for the Actions and transfer all pending and future related actions to the Middle District of Florida.

Dated: September 1, 2023

*/s/ John J. Wackman*
John J. Wackman
NILAN JOHNSON LEWIS PA
250 Marquette Avenue South, Suite 800
Minneapolis, MN  55401
Tel: (612) 305-7500
Fax: (612) 305-7501
Email: jwackman@nilanjohnson.com


*s/Christine M. Mennen*
Christine M. Mennen
NILAN JOHNSON LEWIS PA
250 Marquette Avenue South, Suite 800
Minneapolis, MN  55401
Tel: (612) 305-7500
Fax: (612) 305-7501
Email: cmennen@nilanjohnson.com


*Attorney for Defendant Future Motion, Inc.*