**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: FUTURE MOTION, INC.** ) | |
| **PRODUCTS LIABILITY LITIGATION** ) | **MDL DOCKET NO. 3087** |
| ) | |

**<u>PLAINTIFF STEPHEN RUSSO'S MEMORANDUM OF LAW IN RESPONSE AND OPPOSITION TO FUTURE MOTION INC.'S MOTION FOR TRANSFER OF ACTIONS TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS.</u>**

## I. INTRODUCTION

Plaintiff Stephen Russo (hereinafter referred to as "Plaintiff Russo") respectfully submits this opposition to the motion of Defendant Future Motion, Inc. (hereinafter referred to as "Defendant Future Motion") for consolidation and transfer of thirty-one (31) pending federal products liability cases across fifteen (15) different jurisdictions pursuant to 28 U.S.C. § 1407, to the Middle District of Florida.

For the reasons set forth below, the Panel should deny the Motion because consolidation would not be convenient to the parties and witnesses, particularly in light of discovery nearing its end in this case, and would not promote the just and efficient conduct of the pending actions that are the subject of the Motion. Transfer is also inappropriate because no common questions of fact exist amongst the subject Plaintiffs that are so complex, and the accompanying common discovery so time-consuming, as to overcome the inconvenience to the party (and its witnesses) whose action is being transferred.

## II.     BACKGROUND & RELEVANT FACTS

### A.     The Russo Matter

On May 12, 2022, Plaintiff Stephen Russo filed a product liability lawsuit against Defendant Future Motion, Inc., in Superior Court of New Jersey, Bergen County, in relation to serious permanent injuries he sustained while using Future Motion's XR One Wheel+ self-balancing skateboard on August 17, 2020 (cumulatively referred to as the "Russo Matter"). Attached hereto, made a part hereof and known as **Exhibit "A"** is a copy of the Complaint.

On that date, Plaintiff Russo was riding his One Wheel in his residential neighborhood when it suddenly stopped short, causing the front of the device to hit the pavement, leading him to go airborne, crashing on the ground. Plaintiff Russo was unconscious from the fall and was found on the road by a neighbor. Attached hereto, made a part hereof and known as **Exhibit "B"** is a copy of Plaintiff Russo's Redacted Answers to Interrogatories (without attachments).

Plaintiff Russo alleges that Defendant Future Motion, in the exercise of reasonable care, should have known that the XR One Wheel+ was a dangerous instrument if not properly designed, manufactured, tested, accompanied with adequate warnings, or inspected, and that the XR One Wheel+ presented the probability of harm to any foreseeable users, including Plaintiff Russo, unless it was reasonably fit, suitable, safe for its intended purpose, and free from defects and failures to warn. (See **Exhibit "A."**)

Defendant Future Motion filed a Notice of Removal to the United States District Court, District of New Jersey, on July 1, 2022, and filed its Answer denying all substantive allegations on that same day.

**B.     Status of Discovery**

To date, the bulk of discovery in the Russo Matter has been completed. Written discovery has been exchanged, including initial and supplemental interrogatories and document productions; Plaintiff Russo's deposition was conducted on July 13, 2023; and expert inspections, including a test ride of the subject One Wheel, were conducted on July 12, 2023. The deposition of Future Motion's CEO Kyle Doerksen was noticed by Plaintiff Russo for September 7, 2023, but was adjourned by Defendant Future Motion. Discovery, including expert Discovery, is set to conclude on or before December 29, 2023. Attached hereto, made a part hereof and known as **Exhibit "C"** is a copy of the most recent Amended Scheduling Order.

**C.     The MDL Plaintiffs**

As noted in the Defendant Future Motion transfer motion documents, the related interested lawsuits are comprised of thirty-one actions spread across fifteen different jurisdictions. However, while the cases all involve Future Motion products, the cases do not even all involve the **same** product or conditions concerning the subject event triggering each personal injury claim.

According to Defendant Future Motion in the instant motion papers, "a rider of a Onewheel stands sideways on a board like a traditional skateboard. After the board is turned on, and a rider brings it to level, the motor will engage and start balancing the rider. To go forward, a rider leans forward, and to slow down or stop, a rider leans backwards." See Defendant Future Motion's Memorandum in Support, p. 3.

Furthermore, it is noted that a board is turned by having the rider put pressure on his or her toes or heels to turn the board in the direction chosen. The board is entirely controlled by the rider. The rider decides how fast to ride, the terrain a board is ridden on, and all other aspects of the riding experience." Id. Additionally, Defendant Future Motion noted that since the original

model in 2014, the company **has introduced five other Onewheel models**, distinguished primarily by size and battery range. Id. (emphasis added). These models include the model involved in the Russo Matter, the "XR Onewheel+", along with the "Onewheel Pint", an entirely different board.

As evidenced by the Complaints filed in the thirty-one (31) cases attempting to be consolidated (**Exhibit "A"**), while some cases involve the XR Onewheel+, seven (7) involve the "Onewheel Pint" board. The Complaints also demonstrate that the various boards were being utilized by individuals of different sizes, ages, skill levels and presumably statures, in different states with different terrain and elevations. Id. These distinctions are crucial here, as the product liability claims alleged in these cases are fact-specific to each individual rider and their respective use of the board at the time of accident and are not "common" amongst each other. Therefore, Plaintiff Russo respectfully sets forth the following arguments as to why the Panel should deny the transfer request.

### III.     LEGAL STANDARD

Section 1407 permits transfer and consolidation for pretrial proceedings of civil actions involving common questions of fact that are pending in different districts if the transfer and consolidation "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. However, "centralization under Section 1407 should be the last solution after considered review of all other options." In re Six Flags Fair and Accurate Credit Transactions Act (FACTA) Litig., 2018 WL 671913, at *1 (J.P.M.L. Feb. 1, 2018); In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig., 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

Crucially, transfer for consolidated proceedings is warranted only where all three of the following criteria are met: (1) the actions share common issues of fact, (2) transfer would further convenience of parties and witnesses, and (3) transfer would advance the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). Where the consolidated proceedings do not involve a mass tort, but, like here, a limited number of cases sharing some similar characteristics in subject matter, a moving party "bears a strong burden to show that the common questions of fact are so complex and the accompanying common discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses." In re Scotch Whiskey Antitrust Litig., 299 F. Supp. 543, 544 (J.P.M.L. 1969).

Furthermore, because transfer must "offer some meaningful reduction in overall inconvenience" to the parties and witnesses, consolidation is disfavored when even some of the parties oppose centralization. See Multidistrict Lit. Man. § 5.5. Notably, achieving the "just and efficient" resolution of the cases— an analysis that includes examining numerous factors such as avoiding conflicting rulings, preventing duplication of discovery, and reducing the burden on the parties and the courts—by itself, will not merit consolidation without the party seeking transfer demonstrating the presence of common questions of fact and law that are sufficiently complex to justify consolidation. See In re Raymond Lee Org., Inc. Secs. Litig., 446 F. Supp. 1266, 1268 (J.P.M.L. 1978); Multidistrict Lit. Man. § 5.7. Here, Plaintiff Russo sets forth that Defendant Future Motion cannot meet the burden, and therefore, the request should be denied.

Moreover, as set forth in detail below, the requested transfer and consolidation of the thirty-one (31) pending district court actions fail to serve the convenience of the parties and the just and efficient conduct of the actions. Instead, there are various lawsuits at very different stages, procedurally, and because the cases do not even all involve the same product, consolidation is

unlikely to provide any benefits that could not otherwise be achieved by informal coordination and cooperation among the parties for each individual case.

### IV.     ARGUMENT

**A.     FUTURE MOTION'S APPLICATION FOR TRANSFER SHOULD BE DENIED AS TO THE RUSSO MATTER IN LIGHT OF ITS PROGRESSED DISCOVERY.**

The lawsuit brought by Plaintiff Stephen Russo, well on its way to nearing the end of discovery, should not be consolidated with any other cases, nor should it be transferred to any other venue, at risk of severely delaying and prejudicing the case.

Section 1407 is undeniably premised upon promoting efficiency in litigations. Where transfer would serve to disrupt the progress made in an action or delay the termination of an action, consolidation is inappropriate. In re Chiropractic Antitrust Litigation, 483 F. Supp. 811, 813 (1980); see also In re Qwest Communicational International, Inc., Securities and "ERISA" Litigation, 395 F. Supp. 2d 1360, 1361 (J.P.M.L. 2005) (denying motion to transfer where "centralization would not necessarily …further the just and efficient conduct" of the litigation given the advanced stage of proceedings and the limited number of districts involved).

The instructive case law demonstrates that even when the litigations involve "common issues", something that Plaintiff Russo does not concede here, transfer and centralization is less persuasive and often will not serve "the convenience of the parties and witnesses" or further the "just and efficient conduct of" the litigation when the actions involved are at procedurally different stages and parties to the actions oppose centralization. See, e.g., In re Boehringer Ingelheim Pharm., Inc., Fair Labor Standards Act (FLSA) Litig., 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011).

   **i.     Discovery is Near Completion in the Russo Matter**

As discussed above, discovery is well underway in the Russo Matter, with Defense deposition(s) and expert reports the only remaining significant discovery to complete. Over the past year, the parties have completed written discovery, exchanged medical records, conducted expert inspections of the subject One Wheel board, including a test ride, and conducted Plaintiff Stephen Russo's deposition. Defendant Kyle Doerksen's deposition was noticed by Plaintiff for September 7, 2023 but adjourned by Defendant due to scheduling conflicts. As such, "[t]here are few pretrial proceedings remaining that would benefit from centralized treatment." In re Dental Supplies and Equip. Antitrust Litig., 2018 WL 671391 (J.P.M.L. Jan. 31, 2018). "The panel vacated the order, finding that the transfer would not serve the convenience of the parties and witnesses or promote efficient litigation of the issues. The panel found that the actions were at different stages of discovery, so that the transfer would merely delay further discovery." In re Asbestos & Asbestos Insulation Material Products Liability Litigation, 431 F. Supp. 906, 907.

If Defendant Future Motion's request is granted by the Panel, each of the individual lawsuits will automatically progress – or, in most circumstances, regress due to inactivity, only as fast as the most recently filed case. Here, that case was filed less than one month ago, on August 28, 2023. In fact, there have been a total of six (6) cases filed since Jun 8, 2023. Therefore, the time and effort put into Mr. Russo's case for the past year of conducting discovery will essentially be frozen in time while the most preliminary of discovery is conducted in the aforementioned newly filed lawsuits.

  **ii.**  **The Risk of Inconsistent Rulings is Moot in Light of the Progressed Discovery.**

Section 1407 requires that centralization promote the just and efficient conduct of the actions. The purpose of this statute is the avoidance of conflicting and duplicative pretrial demands on parties and witnesses in related cases. In re Regents of the Univ. of Cal., 964 F.2d 1128, 1131

(Fed. Cir. 1992). While the risks mentioned above are particularly relevant when the cases at hand have not conducted the at-issue discovery or motion practice, that simply is not the situation here.

For example, in the Russo Matter, written and paper discovery exchanges have already been conducted. Plaintiff already provided his deposition, and both Plaintiff and Defendant experts already completed the inspection of the subject Board. It should also be pointed out that the Russo Matter is not the oldest case included in the subject MDL, thus it is reasonable to believe that at least some of the same discovery has also been conducted in those cases as well. Therefore, in terms of risks associated with duplicative pretrial demands and inconsistent rulings, the proverbial "ship has sailed." Of course, this would not apply to the lawsuits that were filed in the past month or two, where discovery has likely not even begun yet. However, Plaintiff Russo contends that forcing his and other cases to come to a standstill while other infant matters serve initial discovery, most certainly fails to promote the just and efficient conduct of the actions.

Based on the foregoing, Defendant Future Motion has failed to demonstrate that a transfer and centralization of the thirty-one (31) pending district court cases in the Middle District of Florida would serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation. Instead, it will cause dozens of plaintiffs and witnesses to be subjected to a highly inconvenient jurisdiction, instead of causing inconvenience to one party – Defendant Future Motion.

**B.     FUTURE MOTION'S REQUEST FOR TRANSFER SHOULD BE DENIED DUE TO THE LACK OF COMMONALITY OR SHARED FACTUAL AND LEGAL ISSUES AMONG THE FUTURE MOTION PLAINTIFFS.**

Under 28 U.S.C. § 1407, the Panel may transfer actions if it determines that: (1) "one or more common questions of fact are pending in different districts." Transfer is "inappropriate where

Movant fails to demonstrate that the common questions of fact are sufficiently complex, or that the accompanying discovery will be so time consuming as to justify" transfer. In re The Boeing Company Employment Practices Litigation (No. II), 293 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003).

Further, when unique questions of fact predominate over common questions of fact, centralization under § 1407 is not warranted. In re Pharmacy Benefit Plan Administrators Pricing Litigation, 206 F.Supp.2d 1362, 1363 (J.P.M.L. 2002). This is true even if actions share common legal questions and some factual questions. Id.

"Merits questions that are predicated on the existence or nonexistence of historical facts unique to each Plaintiff . . . generally are not amenable to across-the-board resolution." In re Fosamax (Alendronate Sodium) Prod. Liab. Litig., 852 F.3d 268, 302 (3d Cir. 2017).

Here, the only commonality amongst the Future Motion Plaintiffs is that they are suing Future Motion for claims involving a board. While some of the cases in the group involve the same type of board that Plaintiff was riding at the time of his accident, some include an entirely different model. Furthermore, unlike a mass tort or products liability case where plaintiffs all utilized a product in the same or similar manner, the Plaintiffs here each uniquely rode one of Future Motion's products, in differing locations, terrains and speeds; with each Plaintiff possessing his or her own riding experience level and different body weight; and with each accident containing its own differing set of facts leading up to the accident. Unless Defendant Future Motion is conceding that its products are, across-the-board, defective in the same manner, each case and its unique set of facts must be examined and applied in conjunction with each individual rider's usage of the board.

In the instant matter, centralization will not serve to avoid conflicting rulings, and will not promote the just and efficient conduct of the underlying actions and will only cause delay and

prejudice to Plaintiff Stephen Russo in spite of his efforts to complete discovery and work towards an amicable resolution of the case.

## V. CONCLUSION

Based upon the foregoing reasons, Plaintiff Stephen Russo respectfully requests that the Panel decline to grant Defendant Future Motion's Motion for Transfer of Action to United States District Court for the Middle District of Florida For Coordinated or Consolidated Pretrial Proceedings.

Dated: September 29, 2023

                                       **LAW OFFICES ROSEMARIE ARNOLD**

                                       *Melissa A. Peace*
                                       **MELISSA A. PEACE**
                                       **1386 Palisade Avenue**
                                       **Fort Lee, NJ 07024**
                                       **(P) 551-275-6664**
                                       **(F) 201-461-1666**
                                       **(E) mtomaino@rosemariearnold.com**
                                       *Attorneys for Plaintiff Stephen Russo,*
                                       *District Court of New Jersey*